IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ERIC D. KRAUS,

       **Plaintiff,**

v.                                                                No. CIV 06-1157 RB/DJS

NATIONAL RAILROAD PASSENGER CORP.,

       **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant's Motion to Exclude Causation Testimony of Dr. Claude Gelinas (Doc. 48), filed on February 29, 2008; and Plaintiff's Motion For Leave to File Supplemental Response to Defendant's Motion to Exclude Causation Testimony of Dr. Claude Gelinas (Doc. 54), filed on March 28, 2008.  Jurisdiction arises under 28 U.S.C. § 1331.  Having considered the submissions of counsel, relevant law, and being otherwise fully advised, I grant Plaintiff's motion and deny Defendant's motion.

**I.**    **Background.**

Plaintiff brought this action under the Federal Employers' Liability Act (herein "FELA"), 45 U.S.C. §§ 51-60, to recover damages for bodily injuries allegedly sustained on January 28, 2004, while he was employed by Defendant on an Amtrak train in Raton, New Mexico.  Plaintiff alleges that he stepped in a hole in a baggage car, fell, twisted his back, and sustained injuries to his back and subsequent damages.

Defendant has moved to exclude the causation opinion of Plaintiff's treating physician, Dr. Claude Gelinas, M.D., on the grounds that it is unreliable within the meaning of Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-92 (1993).  Plaintiff has moved to

supplement Dr. Gelinas' deposition testimony with an Affidavit in which Dr. Gelinas clarifies his deposition testimony. Defendant opposes supplementation, arguing that the Affidavit contradicts Dr. Gelinas' deposition testimony.

**II.     Dr. Gelinas' Deposition Testimony and Affidavit.**

At his January 31, 2008 deposition, Dr. Gelinas testified that he is a board-certified orthopedic spine surgeon. On March 8, 2004, Dr. Wood Lewis referred Plaintiff to Dr. Gelinas, with complaints of back pain and right leg pain. (Pl. Ex. 2, Gelinas Deposition at 7; 9.) Through an intake form and an interview, Plaintiff informed Dr. Gelinas that "he was doing fine" until "he stepped in a hole and, apparently, twisted his back" while at work on January 28, 2004. (Gelinas Depo. at 10; 13.) An MRI "showed an extremely large facet cyst at L4-5 that was impinging on his nerve root [at] L5 . . . [and] degenerative changes at L5-S1." (Gelinas Depo. at 13-14.) Dr. Gelinas noted that physical therapy had not been helpful. (*Id.*) In April 2004, Dr. Gelinas performed surgery on Plaintiff's back for the removal of a synovial cyst located on the facet joint at the L4-L5 position and a small herniated disc at L5-S1. (Gelinas Depo. at 31-32.)

In response to questioning by defense counsel at his deposition, Dr. Gelinas testified that the precise mechanism of injury was irrelevant to treatment and diagnosis. "So, you know, whether he stepped in a big hole, small hole, twisted, fell to his knees, fell to the back, to me, it doesn't really matter. Any of those things can cause an aggravation of an underlying degenerative condition in the back." (Gelinas Depo. at 11.)

When specifically questioned regarding causation by Plaintiff's counsel, Dr. Gelinas gave the following responses:

> Q. In your – and I'm going to ask you just a couple of questions on your opinion, based upon a reasonable degree of medical probability, which means more likely than not, in your medical opinion. In your opinion, more likely than not, reasonable

>probability, did this fall, January 28th, 2004, was that the cause or the need of the first, second and third surgery?
>A. I'm going to answer that in very – the way I do all the time.
>Q. Okay.
>A. Assuming the patient's testimony is accurate and truthful, that he had no prior symptoms, this injury did occur and he's become asymptomatic ever since- I mean, he's been symptomatic ever since that time, it is my opinion that they're all lumped together and they're all related to this accident.

(Gelinas Depo. at 61.)

Dr. Gelinas testified in his deposition that approximately half of his patients had no prior history of symptoms and then had a traumatic event which caused them to become symptomatic. (Gelinas Depo. at 22-23.)

According to Dr. Gelinas' deposition testimony, Plaintiff's first surgery for the symptoms on the right-side joint destabilized the spine, and caused added stress to Plaintiff's left-side joint. (Gelinas Depo. at 27.) As a result, Plaintiff developed a left-sided cyst which required a second surgery. (Gelinas Depo. at 29.) In March, 2005, Dr. Gelinas performed a second surgery on Plaintiff to remove another synovial cyst, which had developed on the left facet joint at the L4-L5 position. (Gelinas Depo. at 27.) Due to the removal of the cysts and the instability caused in the joints as a result of that removal, Plaintiff required the two-level fusion. (Gelinas Depo. at 39-43.) In May, 2006, Dr. Gelinas performed a two-level back fusion on Plaintiff. (Gelinas Depo. at 28.)

Upon receipt of Defendant's Motion to Exclude Causation Testimony of Dr. Claude Gelinas, counsel for Plaintiff contacted Dr. Gelinas and requested a phone consultation in order to obtain an affidavit from Dr. Gelinas. The earliest Dr. Gelinas office could schedule this conference was March 24, 2008. During the phone consultation, Plaintiff's counsel requested an affidavit from Dr. Gelinas clarifying his opinions regarding causation. As of March 28, 2008, the date Plaintiff's Response was filed, counsel for Plaintiff had not received the affidavit. Therefore, Plaintiff filed

his Motion for Leave to Supplement Response to Defendant National Railroad Passenger Corporation's *Daubert* Motion to Exclude Causation Testimony of Dr. Claude Gelinas contemporaneously with his Response.

On April 2, 2008, Plaintiff filed a Supplement to Response to Defendant National Railroad Passenger Corporation's *Daubert* Motion to Exclude Causation Testimony of Dr. Claude Gelinas, with the Affidavit of Claude Gelinas, M.D. (herein "Gelinas Affidavit") attached thereto.

The Gelinas Affidavit states:

> [Plaintiff] was asymptomatic prior to his fall on January 28, 2004. There was no history of back problems prior to the fall on January 28, 2004 . . . . [F]rom a medical standpoint, the injury either caused the formation of the cyst or the cyst was asymptomatic prior to his injury, and the injury made it symptomatic, requiring surgery. I would also state that the first surgery included a laminectomy as L5-S1 for the removal of a small herniated disc that in my opinion was caused by the fall on January 28, 2004 . . . . My opinion as reflected in my deposition with regard to causation was that it did not matter whether the cyst pre-existed or did not pre-exist the injury of January 28, 2004. . . . The reason for this opinion is that if the cyst did not pre-exist the injury, it was asymptomatic; therefore, the injury made it symptomatic and caused the need for the surgeries. If the cyst was not present before the injury, then the injury was the cause of the cyst.

(Doc. 56-1, Pl. Ex. 3, Gelinas Aff.)

## III. Discussion.

### A. Dr. Gelinas' Affidavit is Consistent with His Prior Deposition Testimony.

Defendant argues that Plaintiff's attempt to supplement his response to Defendant's Motion to Exclude Causation Testimony of Dr. Claude Gelinas is procedurally deficient because Dr. Gelinas made no corrections to his deposition pursuant to Fed. R. Civ. P. Rule 30(e).[1]

---

[1] Fed. R. Civ. P. 30(e) provides:
(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:
   (A) to review the transcript or recording; and
   (B) if there are changes in form or substance, to sign a statement listing the

Here, the Gelinas Affidavit did not change the form or substance of the Gelinas deposition. Because the Gelinas Affidavit does not correct the deposition testimony, Dr. Gelinas was not required to comply with the requirements of Rule 30(e) with respect to his Affidavit. Thus, Plaintiff's request to supplement his response with the Gelinas Affidavit is not procedurally deficient under Rule 30(e).

Defendant asserts that the Gelinas Affidavit should be disregarded because it directly contradicts the Gelinas deposition testimony. An affidavit that is contrary to prior deposition testimony should be disregarded when it "constitutes an attempt to create a sham fact issue." *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986). *Id*. However, when the deposition testimony is ambiguous and the affidavit assists in clarifying it, a witness is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition. *Selenke v. Medical Imaging of Colorado*, 248 F.3d 1249, 1258 (10th Cir. 2001) (noting that a subsequent affidavit may be used to clarify ambiguous or confusing deposition testimony).

Comparison of the Gelinas Affidavit with Dr. Gelinas' deposition testimony reveals that the Affidavit is consistent with the prior deposition testimony. The fact that there are no substantive differences underscores the determination that the Affidavit clarifies, and does not contradict, the deposition testimony. *See Rios v. Bigler*, 847 F.Supp. 1538, 1546-47 (D. Kan. 1994) ("The court will only consider those changes which clarify the deposition, and not those which materially alter the deposition testimony as a whole"). Accordingly, Plaintiff's Motion For Leave to File Supplemental Response to Defendant's Motion to Exclude Causation Testimony of Dr. Claude

---

changes and the reasons for making them.
(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

Gelinas will be granted.

### B. Dr. Gelinas' Causation Opinion is Admissible.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court instructed that district courts are to perform a "gatekeeping" role concerning the admission of expert scientific testimony. *See id.*, 509 U.S. at 589-93. The objective of the gatekeeping obligation is "to ensure the reliability and relevancy of expert testimony . . . . to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.*; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

In order to determine that an expert's opinions are admissible, the court must conduct a two-part analysis: first, the court must determine that the witness is qualified by "knowledge, skill, experience, training, or education" to render the opinions; and second, the court must determine "whether the witness' opinions are 'reliable' under the principles set forth" in *Daubert* and *Kumho Tire*. *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). The rejection of expert testimony is the exception, rather than the rule. *See* Fed. R. Evid. 702 advisory committee notes.

To qualify as an expert, the expert must possess such "knowledge, skill, experience, training, or education" in the particular field as to make it appear that his or her opinion would rest on substantial foundation and would tend to aid the trier of fact in its search for the truth. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004). In *Daubert*, the Supreme Court identified four nonexclusive factors that a trial court may consider to assist in the assessment of reliability: (1) whether the theory at issue can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether there is a known or potential rate of error and whether there are standards controlling the methodology's operation; and (4) whether the theory has been accepted in the relevant scientific community. *Daubert*, 509 U.S. at 593-94.

In *Kumho Tire*, the Supreme Court underscored that these four factors are not a "definitive checklist or test" and that a court's inquiry into reliability must be "tied to the facts of a particular case." *Kumho Tire*, 526 U.S. at 150. Notably, in some cases, "the relevant reliability concerns may focus upon personal knowledge or experience," rather than the *Daubert* factors and scientific foundations. *Id.* The district court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.*, 526 U.S. at 152.

The question of whether the January 28, 2004 incident played any part in producing the injury[2] neither presents a complex medical situation, nor involves novel medical theories. The Tenth Circuit has held that, even in more complicated cases when an examining physician calls upon training and experience to offer a differential diagnosis (a determination of which one of two or

---

[2] FELA provides that "[e]very common carrier by railroad ... shall be liable in damages to any person suffering injury while he is employed by such carrier ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." 45 U.S.C. § 51. With respect to causation, the Supreme Court has held that "the test of a jury case" under the statute is "simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 506 (1957).

7

more diseases, presenting with similar symptoms, has caused a patient's ailments), most courts have found no *Daubert* problem.  *See, e.g., Bitler v. A.O. Smith Corp.*, 391 F.3d 1114, 1123 (10th Cir. 2004) (collecting cases holding that qualified doctor's differential diagnosis of patient was sufficiently reliable for Rule 702 and Daubert purposes).  Dr. Gelinas testified in his deposition about a routine diagnosis, on a patient he had examined and treated, pertaining to a condition within his particular expertise.  These factors underscore that Dr. Gelinas' training and experience place his testimony and affidavit within the requirements of Rule 702 and *Daubert*.

Notably, numerous courts have recognized that a treating physician often forms an opinion as to the cause of an injury in the future based upon his examination of a patient.  *See, e.g., Mangla v. Univ. of Rochester*, 168 F.R.D. 137, 139 (W.D. N.Y. 1996) (forming such opinions is "a necessary part of the treatment of the patient"); *Salas v. United States*, 165 F.R.D. 31, 33 (W.D.N.Y. 1995) ("As a general rule, a treating physician considers not just the plaintiff's diagnosis and prognosis, but also the cause of the plaintiff's injuries . . . . Accordingly, questioning . . . as to whether the injuries for which [the physician] treated the plaintiff can be causally related to the accident would appear to be within the scope of the patient's care and treatment."); *Baker v. Taco Bell Corp.*, 163 F.R.D. 348, 349 (D. Colo. 1995) ("These opinions are a necessary part of the treatment of the patient.").

Consequently, treating physicians have been permitted to testify to determinations regarding the cause of an injury that they made in the course of providing treatment.  *See Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 870 (6th Cir. 2007) (stating "[t]his conclusion is supported by the obvious fact that doctors may need to determine the cause of an injury in order to treat it"); *Starling v. Union Pacific*, 203 F.R.D. 468, 479 (D. Kan. 2001) (recognizing "the prevailing weight of authority today is that, to the limited extent that opinions about the cause of an injury are a necessary

8

part of a patient's treatment, treating physicians may opine on causation"); *Washington v. Arapahoe County Dep't of Social Servs.*, 197 F.R.D. 439, 442 (D. Colo. 2000) (same), *Prater v. Consol. R. Corp.*, 272 F.Supp. 2d 706, 712 (N.D. Ohio 2003) (same); *Shapardon v. West Beach Estates*, 172 F.R.D. 415, 416 (D. Haw. 1997) (treating physician "can express an opinion as to 'the cause of any medical condition presented in a patient, the diagnosis, the prognosis and the extent of the disability, if any, caused by the injury."); *Brown v. Best Foods, Inc.*, 169 F.R.D. 385, 387 (N.D. Ala. 1996) (treating physician may "state his opinions and inferences concerning the existence and cause of a diagnosed medical condition suffered by the plaintiff").  As Plaintiff's treating physician, Dr. Gelinas may testify as to his opinion regarding the cause of the injury.

Defendant's contention that Dr. Gelinas based his opinion solely on the temporal relationship between the incident and Plaintiff's symptoms is unsupported by the record.  Dr. Gelinas testified in his deposition, and stated in his affidavit, that the temporal proximity was just one factor that supported his opinion as to causation.  Thus, Dr. Gelinas did not rely solely on the temporal relationship in forming his opinion as to causation. *See Goebel v. Denver and Rio Grande Western R. Co.*, 346 F.3d 987, 999 (10th Cir. 2003) (observing that a temporal relationship is a permissible factor in causation determination, so long as is not the sole factor).  Defendant highlights several reasons why a fact finder should distrust Dr. Gelinas' opinions, such as extrapolation from basic principles in order to reach his conclusion and the fact that he did not review Plaintiff's prior medical records.  These factors go to the weight to be accorded to his testimony, not to its admissibility.

As a board-certified orthopedic surgeon who specializes in treatment of spinal injuries, Dr. Gelinas is qualified by his professional credentials and experience to form an opinion as to the cause of Plaintiff's injury.  As a treating physician, Dr. Gelinas' reasoning and methodology are reliable and his opinion is sufficiently relevant to the task at hand to satisfy the requirements of *Daubert*.

Simply put, Plaintiff has made a sufficient showing of the relevance and reliability of Dr. Gelinas' testimony to permit him to testify as a treating physician and expert on the issue of causation at trial. Accordingly, Dr. Gelinas will be permitted to testify at trial concerning, inter alia, his medical opinion that he formed during the course of his treatment with respect to the cause of Plaintiff's injury.

**WHEREFORE,**

**IT IS ORDERED** that Plaintiff's Motion For Leave to File Supplemental Response to Defendant's Motion to Exclude Causation Testimony of Dr. Claude Gelinas (Doc. 54), filed on March 28, 2008, is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant's Motion to Exclude Causation Testimony of Dr. Claude Gelinas (Doc. 48), filed on February 29, 2008, is **DENIED.**

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**